February 6th, 1905.

———————o———————

## No. 3619.

(Court of Appeal, Parish of Orleans.)

V. SCHWAN & CO., LTD., vs. G. H. CLAUSEN.

Appeal from Civil District Court, Division "D."

H. M. Ansley, for Plaintiff and Appellee.

W. S. Benedict, for Defendant and Appellant.

Plaintiff, as the original holder of certain promissory notes, sued the maker thereof. For a defence, the defendant urged want of consideration. HELD: The defence was made good.

MOORE, J. This was a suit on fourteen promissory notes made by the defendant, dated April 1st, 1900, payable monthly and aggregating the sum of $333.39.

The defense was want of consideration.

There was judgment for the plaintiff as prayed for, and defendant appeals.

The evidence, as we appreciate it, discloses the following facts.

The plaintiff corporation was organized under the limited

liability act and was engaged in the wholesale grocery business. The sole holders and owners of the capital stock were V. Shwan, Geo. A. Villere and a Mr. White.

Villere was the vice-president and general manager of the concern, and as such, and especially by authority of a resolution of the board of directors, had full and sole authority to employ and discharge all the employees and to fix their respective salaries.

Among the employees of the establishment was George H. Clausen, defendant. He was employed as the head of the sales department and had been in plaintiff's employ for about five years. He was employed by Mr. Villere and originally at a salary of $75.00 per month; within two months thereafter, his ability and integrity, and proficiency, influenced Villere to increase the salary to $100.00 a month, and subsequently, and up to the 1st day of September, 1898, to $125.00 a month.

About the month of August of that year defendant was offered a larger salary elsewhere and so informing Villere, he expressed his intention of leaving the firm. Villere protested against losing an employee in whom, as he testified, he "had a great deal of confidence" and whom he regarded not only as "really the only valuable clerk in that store," but at once "one of the best grocerymen in the City of New Orleans"; and as an inducement to his remaining offered to raise defendant's salary to $175.00 per month beginning on the 1st day of September, 1899. The offer was accepted and Clausen remained. Mr. Villere, however, stated to Clausen, that he did not wish the other clerks in the house to know of this increase of salary as they would, in that event, annoy him with demands for an increase of their salaries, and it was then suggested by Villere that in order to prevent the knowledge of the increase being knowing to the clerks Clausen's salary account on the books of the concern would continue to show a monthly credit of only $125.00; but that he, defendant, could, nevertheless, overdraw that amount at the rate of fifty dollars

117

per month for the insuing year, and that upon balancing of the books and Clausen's account at the end of the year, the extra allowance of $50.00 per month would be charged off to salary account.

Under this agreement, which was known to all the three stockholders of the corporation, and to the bookkeeper and cashier, Clausen drew his regular salary, and from the 1st day of September, 1898 to the 1st day of May, 1899, he also drew some four hundred dollars on account of this *extra* allowance, which, it appears, was charged up to *expense account* as each sum was drawn.

In the month of April, 1899, V. Schwan, who was the principal stockholder in the concern, died and his heirs, who were all of age, succeeded to his interest in the company.

About this time Villere and White became dissatisfied with the conditions then existing in the affairs of the company and sold their stock to the Schwan heirs and retired from the concern.

The Schwan heirs were fully advised by Villere, prior to his retirement from the business of the arrangement he had made with Clausen as to his salary and was also so informed by Clausen himself as soon as these new parties came into control.

No objection of any kind whatsoever was raised by them at the time as to this arrangement. It was not suggested that Villere had exceeded his authority or that Clausen did not decline the increase; nor was there any protest, suggestion or intimation that the extra allowance of $50.00 per month for the past 8 months was not just and proper and should not stand as covenanted between the parties. It was urged, however, by the new management, that for the future, (from the 1st of May, 1899, on to the end of employment) it would be impossible to allow Clausen a salary of more than $125.00 per month. When this was suggested to Clausen he requested that two or three days be given him to reflect over the proposition, which delay was granted.

Subsequently, when he discovered that he could not better himself elsewhere at that season of the year, he consented to remain at his old salary of $125.00 a month.

He continued in plaintiff's employ nearly thirteen months after this, and during this period not the slightest mention was made of the extra $50.00 per month which he had been drawing for the eight months preceding this new management, nor was any suggestion made or intimation given that the amount so drawn was considered in the light of an "overdraft" for which Clausen was responsible, until the month of April, 1900, when Clausen informed the company that he had been offered, and had accepted, employment with J. & M. Schwabacker, who were engaged in the same line of business as that conducted by plaintiff, at a larger salary than what he was then receiving.

Then it was that he was informed by his employees that the plaintiff regarded the amount which he had drawn on account of the increase of salary as an "overdraft" which must be reimbursed, adding that he could not secure any employment from the Schwabachers until that matter had been settled as the Schwabachers had informed plaintiff that they would not take Clausen in their employ until he had made arrangements to settle that "overdraft."

Fearing to lose the opportunity thus offered him by the Schwabachers for the bettering of his position through what he believed to have been the report of his house to the Schwabachers that he had improperly overdrawn his account and had failed to make it good; and not doubting his employer's statement that the Schwabachers had declared that they would not give him employment unless he provided for the liquidation of the alleged overdraft, he yielded to the demands of plaintiff and executed the notes sued on and instantly severed his connection with the plaintiff and accepted employment with the Schwabachers where he is still employed.

It subsequently developed that the reported declaration of the Schwabachers was false. They had made no such statement to plaintiff or to any one else. They did not even know of the transaction at all when they took Clausen into their service and never learned of the matter until some few months prior to the institution of the present suit which was filed on the 15th day of May, 1901, (thirteen months after the notes had been obtained), at which time Clausen informed them of all the facts and they then advised him to resist suit to the end.

Comment on the conduct of the plaintiff company in this particular is unnecessary.

The testimony of the defendant as to his right to what the plaintiff calls the "overdraft", is clear, direct and positive. It bears upon its face the stamp of truth and besides is fully corroborated by Villere, the vice-president and general manager, and by the then cashier, who testified that the sums thus drawn by defendant were at once charged to "expense account" which is the proper account to which all expense shown by salary accounts are finally carried.

Testifying to this transaction, the defendant says:

"* * * * , in August, 1898, I informed Mr. Villere, who was manager of the establishment, and had authority to act in all such matters, that I intended to leave, to better my position. He wouldn't listen to it. He said: 'I will not listen to your leaving our employ at the present time.' I told him it was a money consideration with me, and I would leave it to him, and he said: 'We will increase your salary fifty dollars a month, making it a hundred and seventy-five dollars.' I told him that was satisfactory to me, and I would remain, and he made a request of me: 'Now, I have increased your salary, but I haven't increased the salary of any other employee, and I want this to be kept strictly confidential; you overdraw your account, or, in other words, you draw to the extent of fifty dollars per month more, and at the end

of the year we will wipe that out on the books upstairs; but it must be kept strictly confidential.' Therefore, nobody knew anything about it, except Mr. Villere and Mr. White, and probably Mr. Schwan."

In corroboration thereof, Villere testifies:

"George Clausen was in my employ as, I should say, groceryman. I had a great deal of confidence in him and in his ability. I considered him really the only valuable clerk we had in that store. I considered him one of the best grocerymen in the City of New Orleans, and I repeatedly raised his salary from the time he came in my employ until some months, I don't remember how many, previous to my withdrawing from the firm, when I told Mr. Clausen that he could overdraw his account, or I would increase his salary, but I didn't want it to appear on the books on account that it would create a general row and everybody would want to be increased, so I told him, 'Go on, Clausen, just draw, and when you will be overdrawn we will fix that, and I raise your salary from now $50.00 a month more.' When I withdrew from the firm I had not credited Mr. Clausen yet with the amount that I had promised him, and so stated to my successors, and also to the clerks; to the man who kept the books, and the cashier. That's about all I know."

It appears, however, that on the 15th of November, 1900, defendant, when pressed for payment of the notes, wrote plaintiff as follows.

"I have not got the funds to meet that note to-day. If you desire to hold it until the first, well and good, but if not I guess the only course you can pursue in the matter is to enter suit. This is left to your decission."

This, it is urged, is an acknowlegement of the debt and hence contradicts both Clausen and Villere.

Standing by itself, and unexplained, this letter would be construed as an acknowlegment of plaintiff's right and binding upon

the writer thereof. The testimony of both Clausen and Villere, which was received without objections, outweighs by far the force of this acknowlegement and must control.

Besides, this letter was, in the first place, written by the defendant in ignorance of his legal rights; and in the second place, we are persuaded from the evidence that the defendant was still under the fear that it would prejudice him with his employers, J. & M. Schwabacher, to whom he had not yet communicated the facts of this transaction, should they discover that he had not yet settled the so callled overdraft.

Plaintiff and appellee invoked the rule that where questions of fact only are involved, as in the case here, great consideration is given to the judgment of the lower court, who saw and heard the witnesses.

The rule finds no application here, forasmuch as our esteemed brother of the lower court did not see and hear all the witnesses who testified in the cause. A major portion of the testimony, and perhaps the most important testimony, was taken out of court and submitted to him as all of it is to us. The Judge *a qua* assigned no written reasons for his judgment and we are hence not advised as to the considerations which operated in his mind. Our appreciation of the evidence is that the defendant has completely established the fact that the notes sued on were without consideration, and as they are still in the hands of the original holders there can be no recovery thereon.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and the same is hereby set aside, avoided and reversed and plaintiff's suit dismissed at its costs in both courts.

February 6th, 1905.

Rehearing refused February 20th, 1905.